# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| PAUL HUNTER,<br><br>       Plaintiff,<br><br>v.<br><br>JEFF LEGGETT, FAYE FLANCHER, JON FREDRICKSON, HEATHER KRAUSE, KRISTIN CAFFERTY, THEODORE SPYPRESS, SCOTT CRAIG, AARON LAMBERTY, and STATE OF WISCONSIN,<br><br>       Defendants. | Case No. 22-CV-424-JPS<br><br>**ORDER** |

  This case comes before the Court on (1) Defendants Jeff Leggett, Heather Krause, Theodore Spypress, Scott Craig, and Aaron Lamberty's (the "County Defendants") motion to dismiss, ECF No. 11; (2) Defendants Faye Flancher, Jon Fredrickson, Kristin Cafferty, and the State of Wisconsin's (the "State Defendants" and together with County Defendants, "Defendants") motion to dismiss, ECF No. 16; (3) Plaintiff Paul Hunter's ("Hunter") motion for permanent injunction, ECF No. 14; and (4) Hunter's two requests and/or motions to amend his complaint, *see generally* ECF Nos. 15, 23, 24.

  Hunter did not file an opposition to either the County Defendants' or State Defendants' motions to dismiss, nor has he filed an extension of time to do so. Both motions were filed with accompanying certificates of service confirming that they were served on Hunter by United States mail. ECF Nos. 13, 16-1. The Court has afforded Hunter ample opportunity to

oppose Defendants' motions to dismiss, and well over the 21 days permitted by the Local Rules for an opposition, even with the extra three days afforded to Hunter where service is made by mail. Civ. L.R. 7(b); Fed. R. Civ. P. 6(d). Civil Local Rules 7(b) and (d) warn that "[f]ailure to respond to [a] motion may result in the Court deciding the motion without further input from the parties," and that "[f]ailure to comply with [motion] briefing requirements . . . may result in sanctions up to and including the Court denying or granting the motion."

However, Hunter has filed his own motions in the interim, all of which Defendants have opposed, and which are now ripe for a decision. Thus, the Court cannot say that Hunter is not prosecuting his case. *See Bell v. Kozak*, No. 18-CV-1150-PP, 2019 WL 4261069, at *1 (E.D. Wis. Sept. 9, 2019) (dismissing case for failure to respond to dispositive motion *and* failure to diligently prosecute) (citing Civ. L.R. 7(d)). Accordingly, in line with Seventh Circuit guidance, the Court will consider Defendants' motions to dismiss to determine whether they state adequate grounds for the relief requested. *Bonvolanta v. Delnor Cmty. Hosp.*, 413 F. Supp. 2d 906, 908 (N.D. Ill. 2005) (citing *Nabozny v. Podlesny*, 92 F.3d 446, 457 n.9 (7th Cir. 1996) ("[T]he Seventh Circuit . . . requires that before granting a dispositive motion as unopposed, the trial judge must look at the motion to determine whether it states adequate grounds for the relief requested.")). The Court also considers and adjudicates Hunter's intervening motions for permanent injunction and to amend his complaint.

Because the Court determines that Defendants' motions to dismiss, ECF Nos. 11, 16, state adequate grounds for the relief requested, it will grant them. The Court will further deny Hunter's motion for permanent injunction, ECF No. 14, and his requests and/or motions to amend his

complaint, ECF Nos. 15, 23, 24, because the Court determines that any amendment would be futile on the basis of the *Rooker-Feldman* doctrine. Consequently, the Court will dismiss the entire action.

1. **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b) provides for the dismissal of complaints which, among other things, "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (internal citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Twombly*, 550 U.S. at 555–56).

2. **RELEVANT ALLEGATIONS**

   2.1 **Legal Framework**

Hunter brings causes of action for alleged violations of his First, Fourth, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment constitutional rights. Hunter's causes of action for the alleged constitutional violations (the first through fifth causes of action) are labeled as against all of the individual Defendants. ECF No. 1 at 17–24. The same is true for

Hunter's catch-all cause of action under 42 U.S. § 1983 (the eleventh cause of action), which appears to be a claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).[1] *Id.* at 33–34 (referencing enforcement of "an alleged Company Requirement and Policy").

Hunter also brings a cause of action, labeled as against all of the individual Defendants, under 31 U.S.C. § 3720D (the tenth cause of action). ECF No. 1 at 30–31. That statute lays out the garnishment procedure to be followed by "the head of an executive, judicial, or legislative agency that administers a program that gives rise to a delinquent nontax debt owed to the United States." Failure to follow the procedures set forth in Section 3720D gives rise to a private right of action "against the government agency ordering the improper" garnishment. *See Pine v. Dep't of Educ.*, No. 20-CV-527, 2020 WL 4334885, at *7 (E.D. Pa. July 28, 2020) ("Congress necessarily implied a monetary remedy if the Government perpetrates an illegal exaction pursuant to their authority.") (internal citations omitted).

Hunter additionally purports to bring his civil suit under a variety of criminal statutes (the sixth through ninth causes of action). ECF No. 1 at 24–30 (causes of action labeled as arising under 15 U.S.C. § 645, 18 U.S.C. § 241, 18 U.S.C. § 242, and 18 U.S.C. § 245, respectively). The Court will summarily grant Defendants' motions to dismiss with prejudice these causes of action because, generally, "[f]ederal criminal statutes do not provide a private cause of action for civil liability." *Stephens v. Felsch*, No. 3:20-CV-00729-GCS, 2020 WL 9607901, at *1 (S.D. Ill. Sept. 25, 2020). "Indeed, the Supreme Court has explained that it has rarely implied a

---

[1] *Monell* provides a vehicle for municipal liability under Section 1983 if the plaintiff establishes that there is an underlying policy that caused the harm. *Monell*, 436 U.S. at 690.

private right of action under a criminal statute, and where it has done so, there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." *Lockhart v. HSBC Fin. Corp.*, No. 13 C 9323, 2014 WL 3811002, at *8 (N.D. Ill. Aug. 1, 2014) (internal citations omitted). Here, "[t]here is no language in the statutes [identified by Hunter] that would imply a cause of action." *Williams v. Drakaina Logistics*, No. 21-CV-1436, 2022 WL 36957, at *6 (E.D. Cal. Jan. 3, 2022) (holding no private cause of action under 15 U.S.C. § 645, 18 U.S.C. § 241, 18 U.S.C. § 242, and 18 U.S.C. § 245). Thus, the Court will dismiss with prejudice Hunter's sixth through ninth causes of action.

### 2.2 Factual Allegations

Hunter filed this action on April 5, 2022 and paid the filing fee in full. ECF No. 1. Hunter's claims are difficult to comprehend. This is so because Hunter's complaint, in part, quotes from inapposite case law and statutes. *See, e.g., id.* at 4 (citing Supreme Court of Montana case law on separation of powers). However, as best as the Court can discern, Hunter's claims against Defendants stem from their handling of his Wisconsin state court child support case, which was closed on January 8, 2020.[2]

It appears that the case was closed by a "Default Finding of Contempt and Order for Commitment" finding that (1) Hunter had notice

---

[2]*See Munoz v. Hunter*, 1999FA000174 (Racine Cnty. Cir. Ct. Feb. 10, 1999), *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=1999FA000174&countyNo=51 (last visited Oct. 31, 2022); *see also Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012) (court may take "judicial notice of the dates on which certain actions were taken or were required to be taken in the earlier state-court litigation—facts readily ascertainable from the public court record and not subject to reasonable dispute"). Hunter additionally attaches as exhibits to his complaint a variety of documents from his state court child support case. ECF No. 1-1.

of a January 3, 2020 hearing and failed to appear, (2) Hunter was previously ordered to pay child support, and (3) Hunter was in contempt for "willful failure to comply with orders previously issued by the court." ECF No. 1-1 at 2. The same order served as a warrant for Hunter's arrest for his failure to pay court-ordered child support. *Id.* The order instructed Hunter that he "may purge the contempt upon his[] payment of $3,000.00." *Id.* It further explained that "[i]f [Hunter] is unable to pay the amount of the purge, [Hunter] may seek a hearing." *Id.* The order was issued and signed by Defendant Jon Fredrickson ("Fredrickson") and noted the appearance at the June 3, 2020 hearing of Defendant Aaron Lamberty ("Lamberty").

Hunter alleges that, on November 24, 2020, he requested dismissal of the arrest warrant, which request Defendants Fredrickson, Faye Flancher ("Flancher"), Kristin Cafferty ("Cafferty"), Jeff Leggett ("Leggett"), Scott Craig ("Craig"), Lamberty, Heather Krause ("Krause"), and Theodore Spypress ("Spypress") did not act upon. ECF No. 1 at 12. Fredrickson, Flancher, and Cafferty are judges at the Racine County Circuit Court. *Id.* at 10–11. Craig is the commissioner of the Racine County Circuit Court. *Id.* at 11. Lamberty, Krause, and Spypress are child support attorneys at the Racine County Child Support Agency (the "RCCSA"). *Id.* at 10–11. Leggett is a child support attorney and the child support director of the RCCSA. *Id.* at 10; ECF No. 12 at 7.

On February 4, 2021, Hunter states that he filed "court papers, affidavits and motions into the court record." ECF No. 1 at 10. On February 16, 2021, Hunter "appeared in court" where he "filed affidavits and motions to the court record to dismiss the case." *Id.* Craig, Fredrickson, Flancher, Leggett, Lamberty, Krause, and Spypress did not act on Hunter's affidavits, motions, and objections, and continued the case. *Id.* They also did not act

Page 6 of 19
Case 2:22-cv-00424-JPS    Filed 10/31/22    Page 6 of 19    Document 28

on two "Notices of violation of due process" that Hunter filed on February 23, 2021 and March 3, 2021, respectively. *Id.* On March 10, 2021, they again did not act on affidavits that Hunter filed. *Id.* at 13. On March 26, 2021, the RCCSA garnished Hunter's unemployment benefits. *Id.* Hunter sent objection affidavits to Craig, Fredrickson, Flancher, Leggett, Lamberty, Krause, and Spypress, who again did not act on them. *Id.* On March 29, 2021, Hunter filed an affidavit titled "Administrative Office of the United States Court" to the Racine County Sheriff's Office (the "RCSO"), which was "refused and dismissed." *Id.* On April 5, 2021 and April 8, 2021, Hunter again filed court papers, which he alleges in his complaint Craig, Fredrickson, Flancher, Leggett, Lamberty, Krause, and Spypress did not act on. *Id.*

The attachments to Hunter's complaint (which appear to be a very limited sample of the full state court record) bely many of his assertions surrounding the early 2021 time period. The attachments indicate that one of Hunter's early 2021 filings was a proposed order granting dismissal with prejudice of the case. ECF No. 1-1 at 12. On April 27, 2021, Cafferty issued an order declining the proposed order and noting the following:

> If Mr. Hunter's proposed order is seeking dismissal of his warrant, Mr. Hunter was given an opportunity to appeal the commissioner's decision of 2/16/2021 at a hearing before the court on 4/9/2021. Mr. Hunter's letter of 3/3/21 asked for a dismissal of the 4/9/2021 hearing and the hearing was taken off the court's calendar. The statutory time has now passed for a de novo review hearing.

*Id.* at 12, 16. From the attachments, another order appears to have been issued declining Hunter's requests on April 28, 2021. *Id.* at 14.

On June 3, 2021, Hunter alleges that he received a letter from the "U.S. Department of the Treasury Bureau of the Fiscal Service" stating that

his tax refund was applied to a debt that he owed to the RCCSA. ECF No. 1 at 13–14. On June 4, 2021, Hunter sent papers to Leggett requesting review of the alleged debt. *Id.* at 14. Leggett, Krause, Lamberty, and Spypress continued to take no action on Hunter's filings. *Id.* On June 16, 2021, Hunter sent a judicial notice to the RCSO "in regards to dismissing the arrest warrant," on which he did not receive a response, and "the arrest warrant remains active." *Id.* On June 25, 2021, the RCSO informed Hunter that he would have to contact the RCCSA to remove the arrest warrant. *Id.*

On August 18, 2021, Hunter states that he received a second letter from the "U.S. Department of the Treasury Bureau of the Fiscal Service," informing him that his second tax refund was also applied to a debt that he owed to the RCCSA. On August 23, 2021, Hunter filed an affidavit "demanding an Offset hearing to review debt allegedly owed." *Id.* at 15. Leggett, Krause, Lamberty, and Spypress did not act on the request. *Id.* Craig, Fredrickson, Flancher, Leggett, Lamberty, Krause, and Spypress did not act on additional court filings by Hunter on September 8, 2021 and October 8, 2021. *Id.*

On October 15, 2021, Hunter avers that he hired a process server to serve affidavits demanding an "administrative offset hearing" on Wisconsin Governor Tony Evers and Wisconsin Attorney General Josh Kaul. *Id.* at 15. On October 21, 2021, Hunter contacted the district attorney's office in Racine County, which referred him to "the Child Support Agency or family court." *Id.* On October 25, 2021, Governor Tony Evers sent Hunter a letter informing him "to return to court to change a court order." *Id.* On October 29, 2021, Hunter requested that the "Department of Workforce Development Unemployment Insurance Division" investigate his garnishment records. *Id.* at 16. That agency declined, referring Hunter

"back to the Child Support Agency." *Id.* On November 4, 2021, Hunter again requested an administrative offset hearing, which request was not granted. *Id.* On March 4, 2022, Hunter hired a process server to serve court papers on Cafferty, who did not take any action on such papers. *Id.* Finally, on March 11, 2022, Hunter made a final request for an administrative offset hearing, which was not granted. *Id.*

According to Hunter, Defendants' conduct has resulted in his unlawful participation "as a condition of his employment" in a "company requirement work performance contract through wage garnishments in exchange for his labor" without "due process and equal protection of the laws." ECF No. 1 at 2.

3. ANALYSIS

    3.1    Section 3720D

Section 3720D implies a private right of action against a government agency ordering garnishment in violation of the procedures set forth in the statute. *Pine*, 2020 WL 4334885, at *7. However, by its terms, Section 3720D's garnishment procedures apply only to agencies administering programs "that give[] rise to a delinquent nontax debt owed *to the United States*." 31 U.S.C. § 3720D (emphasis added). Here, Hunter "has not alleged that . . . Defendants are seeking to recover a debt owed to the United States." *Williams*, 2022 WL 36957, at *7. Indeed, any debt owed appears to be to Racine County. *Id.* (analyzing identical claim against Fresno County and Solano County Department of Child Support Services and concluding the debt subject to the garnishment was due to the counties, not the United States). Therefore, the Court will grant Defendants' motions to dismiss this claim (Hunter's tenth cause of action) with prejudice.

### 3.2 Defendants' Motions to Dismiss

The Court is constrained to find that it lacks jurisdiction over Hunter's constitutional claims (the first through fifth causes of action), and consequently his standalone Section 1983 claim (the eleventh cause of action, which appears to be a claim under *Monell*, 436 U.S. 658)[3] pursuant to the *Rooker-Feldman* doctrine. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Consequently, the Court will dismiss these claims without prejudice.[4]

The *Rooker-Feldman* doctrine provides that "the Supreme Court of the United States is the only federal court that may review judgments entered by state courts in civil litigation." *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014). Thus, lower federal courts are prohibited from presiding "over claims seeking review of state court judgments . . . no matter how erroneous or unconstitutional the state court judgment may be." *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000). "It is settled that a plaintiff may not seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action." *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993).

Accordingly, the doctrine prohibits federal jurisdiction over claims that are "inextricably intertwined" with state court determinations. *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017); *see also Ritter*, 992 F.2d

---

[3] Where *Rooker-Feldman* is at play, it serves to bar claims under Section 1983, including if raised through the *Monell* vehicle. *Cervantes v. City of Harvey*, 373 F. Supp. 2d 815, 821 n.4 (N.D. Ill. 2005).

[4] When a district court dismisses a claim for lack of jurisdiction, the dismissal must be without prejudice. *Mains v. Citibank, N.A.*, 852 F.3d 669, 678 (7th Cir. 2017).

at 754 ("Plaintiffs who lose in state court may not recast their claims in federal court under the guise of federal constitutional claims . . . if the constitutional claims are inextricably intertwined with the merits of the state court judgment.") (quotations omitted). While there is "no bright line" to separate those federal claims that are "inextricably intertwined" with state claims from those that are not, the Seventh Circuit teaches that the key question is whether "the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Ritter*, 992 F.2d at 754; *Young v. Murphy*, 90 F.3d 1225, 1231 (7th Cir. 1996).

The underlying substance of Hunter's filings indicates that "the state court proceedings . . . are the subject of the case" and that "[h]ad he prevailed [in state court] despite the alleged due process errors, he would have had no injury and no constitutional claim to bring before the district court." *Ritter*, 992 F.2d at 754; *Young*, 90 F.3d at 1231. Indeed, the Seventh Circuit confronted a nearly identical set of facts in *Gorzelanczyk v. Baldassone*, 29 F. App'x 402 (7th Cir. 2002). There, an Illinois state court ordered the plaintiff to pay child support. *Id.* at 403. The plaintiff was jailed after the state court "found him in contempt for willfully refusing to pay." *Id.* The plaintiff argued that *Rooker-Feldman* did not bar his constitutional due process claims because he was not challenging the child support order, but rather contempt orders enforcing the child support order. *Id.* The Seventh Circuit held that "even though [the plaintiff] labels his lawsuit as a § 1983 action alleging due process violations, his real injury is the child support order, not any alleged denial of due process." *Id.* The Seventh Circuit further noted that had the district court held for the plaintiff, the result would have been "to declare the child support order (and any resulting contempt order) invalid as unconstitutionally obtained"; "[t]hat is precisely

what *Rooker-Feldman* forbids." *Id.* Thus, the Seventh Circuit continued, the district court lacked jurisdiction and did not need to reach the peripheral issue of prosecutorial immunity as to the named defendants. *Id.*

So too is the Court's decision here. While Hunter may cast his claims as a grab bag of constitutional and civil rights violations, the thrust of Hunter's action seeks to revisit and undo actions taken by the state court.[5] *See also Dixon v. Rick*, 781 F. App'x 561 (7th Cir. 2019) (upholding dismissal under *Rooker-Feldman* for claims relating to garnishment for child support payments because "[a]lthough Dixon invoked various federal claims . . . essentially, the complaint challenged state-court proceedings to establish and enforce Dixon's child support obligation."); *Syph v. Arce*, 772 F. App'x 356, 357 (7th Cir. 2019) (upholding dismissal under *Rooker-Feldman* where federal case challenged state court rulings on "attempts in state-court litigation to modify [] child-support obligations"); *Johnson v. Lockyer*, 115 F. App'x 895, 896–97 (7th Cir. 2004) ("The district court rightly observed that Johnson's core grievance is really about the validity of a state judgment— the California judgment that registered the Oregon child support order— and federal suits that implicate the validity of state judgments are barred under the *Rooker–Feldman* doctrine . . . . the registration of that judgment in

---

[5]This holding is bolstered by the fact that Hunter has two closed cases, both of which expressly "[d]ismissed on [the] merits," in the Racine County Circuit Court against Fredrickson and Flancher. *Hunter v. Fredrickson*, 2021SC000706 (Racine Cnty. Cir. Ct. Mar. 5, 2021), *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2021SC000706&countyNo=51 (last visited Oct. 31, 2022); *Hunter v. Flancher*, 2021SC000713 (Racine Cnty. Cir. Ct. Mar. 8, 2021), *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2021SC000713&countyNo=51 (last visited Oct. 31, 2022).

a California court and the garnishment proceedings that followed are themselves immune to review by the district court.").

Accordingly, under *Rooker-Feldman*, the Court lacks subject matter jurisdiction over Hunter's constitutional and civil rights claims under Section 1983 (the first through fifth and eleventh causes of action) and these claims must be dismissed without prejudice. To the extent Hunter seeks review of alleged deficiencies in the state proceedings, he may appeal in state court. *See Syph*, 772 F. App'x at 357.

Even if *Rooker-Feldman* did not apply, another jurisdictional defect is present. "[T]he domestic-relations exception to federal jurisdiction blocks federal adjudication of cases involving 'divorce, alimony, and child custody decrees.'" *Syph*, 772 F. App'x at 357 (quoting *Marshall v. Marshall*, 547 U.S. 293, 307–08 (2006)). The Seventh Circuit applies the domestic-relations exception to cases where a plaintiff seeks relief "associated with . . . a decree of . . . child support." *Dawaji v. Askar*, 618 F. App'x 858, 860 (7th Cir. 2015). "State courts are assumed to have developed a core proficiency in probate and domestic relations matters and they can decide federal questions at the same time." *Syph*, 772 F. App'x at 357 (citing *Sykes v. Cook Cnty. Circuit Court Prob. Div.*, 837 F.3d 736, 741 (7th Cir. 2016)). Hunter's suit "falls squarely within the domestic-relations exception." *Id.*; *see also Kowalski v. Boliker*, 893 F.3d 987, 996 (7th Cir. 2018) (claims challenging "action taken by the court and its officers in the course of adjudicating" a state domestic relations case, versus claims regarding "outside actors," support application of domestic-relations exception to federal jurisdiction). Thus, the Court must dismiss Hunter's constitutional and civil rights claims under Section 1983 (the first through fifth and eleventh causes of action) without prejudice on this basis as well.

### 3.3 Immunity Doctrines

The Court notes parenthetically that, even if it had subject matter jurisdiction over the constitutional and civil rights claims, it would be constrained to dismiss with prejudice those claims as against many of the named Defendants on the basis of various immunity doctrines. The Court has already concluded that it lacks jurisdiction over these claims under *Rooker-Feldman*; thus, any inquiry into immunity is purely academic. The Court makes the following observations, however, in the interest of finality.

First, if the Court had jurisdiction, it would dismiss with prejudice the constitutional and civil rights claims against Flancher, Fredrickson, and Cafferty in their individual capacities because judges are absolutely immune from personal liability for acts carried out in a judicial capacity. *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978). All of Hunter's allegations involve actions that Flancher, Fredrickson, and Cafferty took in their judicial capacity; specifically, that they did not act upon and/or dismissed his filings, that they continued the case over his objections, or that they issued a warrant with which he disagreed when he did not pay the child support due.

The Court would also dismiss with prejudice the constitutional and civil rights claims against Craig in his individual capacity because court commissioners, "although not members of a court, perform duties functionally comparable to those of a judicial officer," and are thus entitled to absolute immunity for acts carried out in a judicial officer capacity. *Crenshaw v. Baynerd*, 180 F.3d 866, 868 (7th Cir. 1999) ("[T]he Commissioners are immune from liability, and absolute immunity defeats a suit at the outset so long as the official's actions were within the scope of the immunity.") (internal citations omitted). Hunter's allegations against Craig

Page 14 of 19
Case 2:22-cv-00424-JPS   Filed 10/31/22   Page 14 of 19   Document 28

are identical to those against Flancher, Fredrickson, and Cafferty, and thus involve actions Craig took in his judicial officer capacity.

The Court would further dismiss with prejudice the constitutional and civil rights claims against Leggett, Lamberty, Krause, and Spypress in their individual capacities because all of the acts Hunter attributes to them were related to their efforts to enforce court orders requiring Hunter to pay child support and/or to prosecute him for his failure to pay. Thus, as RCCSA attorneys prosecuting failure to pay child support, Leggett, Lamberty, Krause, and Spypress are entitled to prosecutorial immunity. *Van de Kamp v. Goldstein*, 555 U.S. 335, 345 (2009) (trial prosecutors and their colleagues "enjoy absolute immunity," so long as the claim generally relates to "judicial proceeding[s]," and not mere office administrative functions like "workplace hiring, payroll administration, the maintenance of physical facilities, and the like"); *see also Moultrie v. Cheesman*, 20-CV-4083, 2022 WL 4131766, at *4 (C.D. Ill. Sept. 12, 2022) (for suit in her individual capacity, attorney's "actions in enforcing [plaintiff's] obligations to pay child support" protected by prosecutorial immunity) (collecting cases).

Finally, the Court would dismiss with prejudice any constitutional and civil rights claims against the State of Wisconsin, to the extent Hunter intends to bring any claims against the State. The Court emphasizes the latter point because Hunter labels all eleven of his causes of action as proceeding against the individual Defendants but does not label any of them as applicable against the State. States enjoy sovereign immunity; the Eleventh Amendment bars actions in federal courts against the states. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001). This is true as to both monetary and injunctive suits. *Id.* The constitutional and civil rights claims against, at a minimum, Flancher, Fredrickson, and Cafferty in their official

capacities would also be dismissed with prejudice on this basis. Wis. Stat. § 753.07 ("[A]ll circuit court judges in this state . . . [are] state employees . . . ."); *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (Eleventh Amendment sovereign immunity "remains in effect when State officials are sued for damages in their official capacity"). Again, however, this exercise was purely academic, as the Court lacks jurisdiction over the constitutional and civil rights claims under both *Rooker-Feldman* and the domestic-relations doctrine.

### 3.4 Hunter's Motion for Permanent Injunction

Hunter's motion for permanent injunction seeks to enjoin "the lower Court's exercise of jurisdiction of a child support order." ECF No. 14 at 2. For the same reasons the Court lacks jurisdiction over the constitutional and civil rights claims under *Rooker-Feldman* and the domestic-relations exception, it will deny Hunter's motion for injunctive relief. *See also* 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.").

### 3.5 Hunter's Motions to Amend His Complaint

On June 8, 2022, Hunter filed a proposed amended complaint. ECF No. 15. At that time, Hunter's opportunity to amend his complaint as of right under Federal Rule of Civil Procedure 15(a) had passed. Thus, Hunter needed either leave of court or written consent from Defendants to amend his complaint. Fed. R. Civ. P. 15(a)(3). He had neither. ECF No. 18. Hunter's amended complaint (1) divides between groups of individual Defendants his existing causes of action under the above-identified federal criminal statutes, Section 3720D, and for constitutional and civil rights violations,

Page 16 of 19
Case 2:22-cv-00424-JPS   Filed 10/31/22   Page 16 of 19   Document 28

and (2) purports to bring all of his claims against the individual Defendants in only their individual capacities. ECF No. 15. It also adds additional detail to the physical and mental pain that Hunter alleges he has suffered as a result of the garnishment and arrest warrant. *Id.*

On August 31, 2022, Hunter filed a motion to amend his complaint to add another defendant: Linda Robinson, "a child support worker." ECF No. 24. He included a proposed amended complaint with the motion which, other than adding the new defendant, remains the same as the first proposed amended complaint. ECF No. 23. This attempt at amendment was again untimely under Rule 15, and Defendants again opposed it. ECF Nos. 25, 26.

Neither of the proposed amended complaints remedies the jurisdictional issues raised in this Order. Nor can they, in light of binding Seventh Circuit and U.S. Supreme Court precedent. Further, though parenthetical, the Court has already addressed that (1) the federal criminal statutes raised by Hunter do not provide a private right of action, (2) Section 3720D does not present a viable claim because the debt owed is not to the United States, and (3) absolute immunity shields all of the individual Defendants in their individual capacities as to the constitutional and civil rights claims. Thus, the Court denies leave to amend as to both of Hunter's attempts and/or motions to do so. ECF Nos. 15, 24.

4. **CONCLUSION**

Based on the foregoing, the Court grants Defendants' motions to dismiss. ECF Nos. 11, 16. The Court dismisses with prejudice Hunter's sixth, seventh, eighth, ninth, and tenth causes of action. The Court dismisses without prejudice Hunter's first, second, third, fourth, fifth, and eleventh causes of action. The Court denies Hunter's motion for permanent

injunction. ECF No. 14. The Court further denies Hunter's requests and/or motions to amend his complaint. ECF Nos. 15, 24. In light of the *Rooker-Feldman* doctrine, the Court determines that any amendment of the pleadings would be futile. *Sheikhani v. Wells Fargo Bank*, 577 F. App'x 610, 611 (7th Cir. 2014) (amendment is futile where "*Rooker-Feldman* puts [the] dispute outside the district court's jurisdiction"). As a result, the Court dismisses the entire action.

Accordingly,

**IT IS ORDERED** that Defendants Jeff Leggett, Heather Krause, Theodore Spypress, Scott Craig, and Aaron Lamberty's motion to dismiss, ECF No. 11, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants Faye Flancher, Jon Fredrickson, Kristin Cafferty, and the State of Wisconsin's motion to dismiss, ECF No. 16, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff Paul Hunter's sixth, seventh, eighth, ninth, and tenth causes of action, ECF No. 1 at 24–31, be and the same are hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff Paul Hunter's first, second, third, fourth, fifth, and eleventh causes of action, ECF No. 1 at 17–14, 33–34, be and the same are hereby **DISMISSED without prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff Paul Hunter's motion for permanent injunction, ECF No. 14, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff Paul Hunter's proposed amended complaint, ECF No. 15, and motion to add defendant to second proposed amended complaint, ECF No. 24, be and the same are hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of October, 2022.

BY THE COURT:

*[signature]*

J.P. Stadtmueller
U.S. District Judge

---

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.